[Cite as *Tod v. Cincinnati Technical & Community College*, 2010-Ohio-3222.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

BETHANY TOD

    Plaintiff

    v.

CINCINNATI STATE TECHNICAL AND COMMUNITY COLLEGE

    Defendant
    Case No. 2006-07732

Judge Clark B. Weaver Sr.

DECISION

{¶ 1} Plaintiff brought this action alleging sexual harassment, unpaid overtime wages, and for violation of the federal Uniformed Services Employment and Re-employment Act. After a trial on the issue of liability, the court rendered judgment in favor of plaintiff as to the claim of sexual harassment. The case then proceeded to trial on the issue of damages.

{¶ 2} At the conclusion of the damages trial, the court and counsel agreed that the record would remain open in order for defendant to secure the testimony of John Turner. On January 8, 2010, defendant filed the transcript of Turner's deposition, which is hereby admitted into evidence as Defendant's Exhibit DD. On February 25, 2010, defendant filed a motion to admit into evidence Exhibits U, V, W, X, Y, Z, AA, BB, and CC, which were attached to Turner's deposition transcript. On March 5, 2010, plaintiff filed a response. Upon review, defendant's motion is GRANTED, and the exhibits are hereby ADMITTED.

**{¶ 3}** In March 2005, defendant hired plaintiff to serve as a business manager in its Workforce Development Center. The evidence adduced at the liability trial established that from early on in her tenure with defendant, plaintiff experienced persistent and often intimidating harassment by her supervisor, Sherry Marshall. Marshall's harassment of plaintiff went so far as to include a physical threat during a business managers' meeting on April 24, 2006. Plaintiff reported Marshall's behavior to defendant's administrators several times beginning in mid-2006, but the problems persisted. According to plaintiff, Marshall's conduct interfered with her ability to perform her job responsibilities and ultimately drove her to obtain other employment in early 2007 with Citigroup, Inc.

**{¶ 4}** During the damages trial, plaintiff testified that Marshall's harassment caused her to feel embarrassed, degraded, and humiliated, particularly since such behavior often occurred in the presence of her co-workers. Plaintiff stated that she was "scared to death" that Marshall would assault her during the April 24, 2006 incident, and added that this episode caused her to be fearful of Marshall on subsequent occasions when they were alone. Plaintiff testified that during another incident in which Marshall told her, in the presence of her co-workers, that she should use her physical appearance to get clients to pay for her meals, she felt as if she had been "asked to prostitute" herself.

**{¶ 5}** Plaintiff testified that in order to cope with the distress that resulted from Marshall's behavior, she contacted an employee assistance program offered by defendant, but found it unsatisfactory and instead sought treatment with a psychologist, Shelley Haste, Ph.D. Since June 8, 2005, plaintiff has attended 45-minute therapy sessions with Dr. Haste approximately once a week. Plaintiff testified that she continues to feel humiliation, embarrassment, and fear as a result of Marshall's conduct.

**{¶ 6}** Brian Canteel, who was a business manager in the Workforce Development Center throughout plaintiff's tenure with defendant, testified that he initially observed plaintiff to be a "self-confident, corporate professional," but that as her problems with Marshall wore on, she lost her confidence and vigor, and became visibly distressed. Canteel stated that Marshall's interactions with plaintiff often left plaintiff

noticeably "upset" and "scared." Canteel testified that he specifically recalled that plaintiff appeared "ashen" and "frozen" following the April 24, 2006 incident.

**{¶ 7}** Dr. Haste testified by deposition that from the outset of her therapy with plaintiff, she found that plaintiff suffered from significant psychological issues that were attributable to Marshall's behavior, including panic attacks, nightmares, intrusive thoughts, and flashbacks. Dr. Haste stated that plaintiff's symptoms led her to initially diagnose plaintiff with anxiety and depression, but that she later concluded that the anxiety and depression were actually manifestations of post-traumatic stress disorder (PTSD).

**{¶ 8}** Dr. Haste stated that because PTSD prevents individuals from functionally coping with trauma, plaintiff's therapy subsequent to the PTSD diagnosis has primarily focused on improving her coping mechanisms. According to Dr. Haste, plaintiff is cooperative in this effort, but continues to require therapy to address her coping techniques, self-esteem, and ability to trust others.

**{¶ 9}** Dr. Haste testified that from June 8, 2005, to the time of her deposition on November 24, 2009, she conducted 256 therapy sessions with plaintiff at a rate of $120 per session. Dr. Haste stated that inasmuch as plaintiff's health insurance with both defendant and Citigroup considered her out-of-network, insurance paid for only $907.08 worth of therapy early on, and that she has since billed plaintiff directly. Dr. Haste stated, though, that plaintiff has not paid these bills and has accrued an outstanding balance of $29,032.92. According to Dr. Haste, most cases of PTSD can be stabilized after approximately 24 therapy sessions of 45-minute increments, and she acknowledged that her therapy with plaintiff has continued for a significantly longer period of time. Dr. Haste explained, however, that the instant litigation continues to "re-traumatize" plaintiff, and she opined that once it concludes, plaintiff should require no more than six months of further therapy.

**{¶ 10}** Defendant's expert psychologist, Kathleen Chard, Ph.D., testified that the sources upon which her opinions were based included an interview with plaintiff, three psychological tests that she administered to plaintiff, and a review of Dr. Haste's clinical

records.[1]  Dr. Chard opined that plaintiff neither exhibits symptoms consistent with PTSD, nor did she experience a traumatic event rising to a level that could result in PTSD.  According to Dr. Chard, plaintiff exhibits symptoms of depression and antisocial personality disorder, but she opined that these issues are not attributable to Marshall's harassment of plaintiff.  Dr. Chard testified that even if plaintiff did suffer from PTSD, her therapy has been excessive inasmuch as PTSD can generally be stabilized after about 9-15 therapy sessions.

{¶ 11} Finally, in an effort to impeach plaintiff's credibility, defendant introduced evidence regarding the circumstances that resulted in the termination of her subsequent employment with Citigroup.  Molly Jackson, a human resources generalist for Citigroup, testified that plaintiff's involvement in this litigation came to her attention in January 2009 and that, as a result, she examined plaintiff's November 2006 employment application to determine whether plaintiff had disclosed her employment with defendant.  Indeed, plaintiff omitted this information from her employment application.  (Defendant's Exhibit A.)  According to the deposition testimony of John Turner, Director of Human Resources for Citigroup's operations in Florence, Kentucky, Citigroup elected to terminate plaintiff's employment as a result of this omission.

{¶ 12} Although defendant contends that these facts reflect an act of dishonesty by plaintiff, plaintiff credibly asserts that she elected to omit defendant from the employment application out of fear that a prospective employer might contact Marshall as a reference.  Furthermore, plaintiff testified that she informed all of the Citigroup employees with whom she interviewed, none of whom were called to testify, of both her employment with defendant and her reason for omitting it from the application.

{¶ 13} Based upon the totality of the evidence, the court is persuaded that plaintiff suffered emotional trauma as a result of Marshall's conduct.  Comparing the testimony of Drs. Chard and Haste, including Dr. Chard's inaccurate testimony concerning her licensure, and also considering Dr. Haste's extensive treatment history with plaintiff, the court finds Dr. Haste's opinions to be more reliable than those of Dr.

---

[1]During a status conference with the parties on January 26, 2010, defendant informed the court that Dr. Chard is not licensed to practice psychology in Ohio, despite her sworn testimony to the contrary. The Supreme Court of Ohio has held that where the expert testimony of a psychologist has been admitted, issues involving her licensure go to the weight of the evidence.  *State v. Awkal* (1996), 76 Ohio St.3d 324, 332.

Chard. Although Dr. Haste's treatment of plaintiff has, by her own admission, continued for a significantly longer period of time than might be appropriate for individuals suffering from plaintiff's symptoms, the court finds that Dr. Haste credibly testified that upon the conclusion of this litigation, plaintiff's treatment should reach a timely and successful resolution.

{¶ 14} In light of the foregoing, the court finds that plaintiff is entitled to recover total damages attributable to the sexual harassment by defendant's employee in the amount of $105,000, which includes, but is not limited to, past and future costs of psychological therapy and pain and suffering. Accordingly, judgment shall be rendered in that amount plus the filing fee paid by plaintiff.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

BETHANY TOD

     Plaintiff

     v.

CINCINNATI STATE TECHNICAL AND COMMUNITY COLLEGE

     Defendant
     Case No. 2006-07732

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

This case was tried to the court on the issue of plaintiff's damages. The court has considered the evidence and, for the reasons set forth in the decision filed

concurrently herewith, judgment is rendered in favor of plaintiff in the amount of $105,025, which includes the filing fee paid by plaintiff. Court costs are assessed against defendant. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
CLARK B. WEAVER SR.
Judge

cc:

Eric A. Walker                          Peter A. Burr
Jennifer A. Adair                       3074 Madison Road
Assistant Attorneys General             Cincinnati, Ohio 45209
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

RCV/cmd
Filed June 9, 2010
To S.C. reporter July 7, 2010